*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

| | |
|---|---|
| JOHN C. BLACK, ) | |
| ) | |
|     *Plaintiff* ) | |
| ) | |
| v. ) | *Docket No. 05-172-P-H* |
| ) | |
| JO ANNE B. BARNHART, ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
|     *Defendant* ) | |

*REPORT AND RECOMMENDED DECISION[1]*

In this Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal, the plaintiff contends that the administrative law judge erroneously (i) failed to consider evidence filed after the hearing, (ii) evaluated his credibility, (iii) weighed the opinion of a treating medical source and (iv) evaluated the plaintiff's need for unscheduled breaks while at work. I recommend that the decision of the commissioner be vacated.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5. 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff suffered from gout (well controlled by medication), hypertension (stable and well controlled by medication), mild depression (under control with medication), obstructive sleep apnea (controlled by a prescribed nasal C-PAP machine),

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1381(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on
(*continued on next page*)

fibromyalgia, bilateral carpal tunnel syndrome, supraspinatus tendonitis affecting both shoulders, bilateral plantar fascitis, degenerative arthritis of the knees (status post multiple arthroscopic surgeries), and post traumatic and degenerative joint disease of the left ankle, impairments that were severe but did not meet or equal the criteria of any impairments listed in Appendix 1 to Subpart P, 20 C.F.R. Part 404 (the "Listings"), Findings 3-5, Record at 33-34; that he retained the residual functional capacity to lift and carry up to 20 pounds on an occasional basis and 10 pounds on a repetitive basis, to stand and walk with normal breaks for a total of at least two hours per day, to sit with normal breaks for a total of at least six hours per day, to climb, balance, stoop, kneel, crouch or crawl only occasionally, to bend only moderately or occasionally, with limited ability to push and pull or to operate foot controls with his lower extremities and slightly limited ability to perform fine or gross manipulation; and that he needed to avoid frequent overhead reaching and the performance of work above shoulder level, needed to avoid concentrated exposure to extreme cold and wetness, hazards and moving machinery and needed to avoid more than occasional walking on uneven surfaces, Finding 8, *id*. at 34; that his allegations regarding the pain he experienced, his general symptomatology and the functional limitations imposed by his impairments were not fully credible, Finding 9, *id.*; that he lacked the residual functional capacity to return to his past jobs as a printer operator, magazine driver, service manager and tire repairer, Findings 10-11, *id*.; that given his age (39 on the date of the alleged onset of disability), education (high school equivalency diploma), work history and residual functional capacity, he would be capable of performing unskilled sedentary jobs existing in significant numbers in the national economy, including charge account clerk, call out operator and surveillance system monitor, Findings 6-7 & 12, *id*. at 34-35; and that he therefore had not been under a qualifying disability at any time through the date of the decision, Finding 13, *id*. at 35. The Appeals Council

---

May 26, 2006, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with (*continued on next page*)

declined to review the decision, *id.* at 7-9, making it the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 647 F.2d at 7. The record must contain positive evidence in support of the commissioner's findings regarding the plaintiff's residual work capacity to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

### Discussion

At the hearing before the administrative law judge, the attorney for the plaintiff asked permission to "submit a letter addressing the vocational restrictions," Record at 76, with respect to reaching, handling and fingering, that he had been discussing with the administrative law judge, *id.* at 74-76. The administrative law judge gave him a week to do so. *Id.* at 76. Six days later, the attorney submitted a letter that not only addressed these restrictions, but also the meaning to be given to a limitation imposed by the plaintiff's treating physician and the plaintiff's work history with respect to

---

citations to relevant statutes, regulations, case authority and page references to the administrative record.

a period of years in which his reported earnings appeared low to the administrative law judge. *Id*. at 38 (hearing held August 20, 2003), 510-13 (letter dated August 26, 2003). Submitted with the letter was additional evidence concerning the plaintiff's receipt of workers compensation benefits and a "clarifying" statement from the plaintiff's treating physician. *Id*. at 517-20. This material was not given an exhibit number by the administrative law judge. The administrative law judge's decision is dated December 19, 2003. *Id*. at 35. By letter dated September 29, 2004 the plaintiff's attorney submitted argument to the Appeals Council along with copies of the August 26, 2003 letter and its attachments. *Id*. at 504-08. The Appeals Council assigned two exhibit numbers to the materials. *Id*. at 6, 10. Its letter declining to review the administrative law judge's decision states that it "considered . . . the additional evidence listed on the enclosed Order of Appeals Council" and found that this evidence "does not provide a basis for changing the Administrative Law Judge's decision." *Id*. at 7-8.

As the plaintiff observes, it is not possible from the decision to discern whether the administrative law judge considered the letter and additional evidence. Itemized Statement of Errors Pursuant to Local Rule 16.3, etc. ("Itemized Statement") (Docket No. 6) at 2-3. The fact that no exhibit number was given to the material makes this less likely. The plaintiff contends that the evidence "should be considered . . . because it was submitted prior to the hearing decision" and because "even if considered submitted for the first time to the Appeals Council, the Appeals Council refusal to review is egregiously mistaken because the information could change the decision." *Id.* at 4. In this regard, he cites *Mills v. Apfel*, 244 F.3d 1 (1st Cir. 2001), but that case is distinguishable. That decision is limited to cases in which new evidence is tendered after the administrative law judge's decision, *id*. at 5, which is not the case here.

4

Essentially, the letter argues that the three jobs identified by the vocational expert in response to a hypothetical question at the hearing as being available to a person with the limitations found by the administrative law judge to exist are not in fact suitable for him, due to the limitations imposed by his treating physician, as clarified in the attachment to the letter.  Record at 510-13.  The administrative law judge adopted those three jobs in his opinion, Record at 35, as well as the limitations set forth in his first hypothetical question to the vocational expert, *id*. at 34, 64.  The vocational expert identified the three jobs — charge-account clerk, call-out operator and surveillance-system monitor — after the administrative law judge clarified that he meant the "slight" restriction on gross and fine motor skills that he included in the hypothetical question to include those jobs in which "the person's ability to do a particular function in less than a third of the time" was not affected.  *Id*. at 64-65.

By this definition, one of the three identified jobs in fact does not match the limitations found by the administrative law judge, which also included occasional reaching overhead.  *Id*. at 34, 64.  The job of charge-account clerk requires frequent reaching and handling.  *Dictionary of Occupational Titles* ("DOT") (U.S. Dep't of Labor, 4th ed. rev. 1991) § 205.367-014.  This discrepancy was not explained by the vocational expert, in violation of Social Security Ruling 00-4p.[2]  Social Security Ruling 00-4p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2004), at 246.  This error will be harmless, however, if none of the other errors alleged by the plaintiff require reversal, because the other two identified jobs are consistent with the limitations found by the administrative law judge.

The plaintiff contends that the administrative law judge failed to give proper weight to the residual functional capacity ("RFC") statement submitted by his treating physician, Carl Schuler, D.O.,

---

[2] The administrative law judge stated that the vocational expert did explain this inconsistency, Record at 33, but I see no such testimony in the transcript of the hearing.  In fact, the vocational expert testified that the jobs she identified were consistent with the Dictionary of Occupational Titles with respect to reaching, fingering and handling.  *Id*. at 74.

5

as clarified by the attachment to his attorney's post-hearing letter. Itemized Statement at 7-8. Dr. Schuler's RFC limits the plaintiff to sitting four hours, standing two hours and walking two hours in an eight-hour workday. Record at 466. It limits the plaintiff to lifting twenty pounds occasionally and carrying ten pounds occasionally. *Id*. at 466-67. It limits him to occasional reaching, handling, fingering, grasping and pushing and pulling with both upper extremities. *Id*. at 467. It prohibits him from squatting, crawling, climbing, stooping, crouching or kneeling. *Id*. at 468. It limits him to occasional reaching above. *Id*. Dr. Schuler responded "No" to the question "Is the Claimant able to complete an 8 hour/day, 40 hour/week work week on a sustained, ongoing basis without undue interruptions or absences?" *Id*. at 469. The administrative law judge based his second hypothetical on this evaluation, *id*. at 69, and after some discussion about the possible meaning of the last question on the form removed that factor from the question, *id*. at 69-70. The vocational expert responded that the three identified jobs would still be available. *Id*. at 70. When the administrative law judge attempted to characterize Dr. Schuler's response to the last question on the form as requiring a three to five minute break every four hours in addition to regular breaks, the vocational expert responded that the surveillance-system monitor job would no longer be available. *Id*. at 71.

Dr. Schuler's clarification states that the plaintiff would require breaks more frequently than the two additional daily breaks included in the administrative law judge's modification and that the plaintiff would also miss at least four work days per month. *Id*. at 520. The vocational expert had testified that such limitations would eliminate the other two jobs as well. *Id*. at 72. The plaintiff does not argue that the administrative law judge was required to adopt Dr. Schuler's limitations but rather that the reasons given by the administrative law judge for discounting those limitations are not supported by the evidence. Itemized Statement at 7-8. None of the three RFC evaluations performed by the state-agency physician reviewers mentions any need to take more than the usual breaks from

6

work.  Record at 261-68, 339-46, 364-71.  In all other respects, these evaluations are similar to that of Dr. Schuler.  These evaluations are all dated earlier than Dr. Schuler's RFC report, so the state-agency reviewers could not have considered his conclusions.[3]  *Id*. at 268, 346, 371, 469.  The administrative law judge's reasons for rejecting Dr. Schuler's conclusion that the plaintiff could not complete a regular work week "on a sustained, ongoing basis without undue interruptions or absences," *id*. at 469, accordingly must be examined carefully.

> The administrative law judge set forth his reasons as follows:
>
>> In the judgment of the undersigned this assessment contradicts the doctor's records, which nowhere suggest near the degree of functional limitation he describes in the residual functional capacity assessment and which do not support the assessment with specific clinical findings.  Equally importantly, the assessment is markedly at odds with the claimant's activities of daily living (discussed below).  The doctor's opinion is therefore not deemed to be entitled to controlling weight.

*Id*. at 27.  The administrative law judge then went on to adopt most of the limitations included in the state-agency physician reviewers' assessments.  *Id*.  The plaintiff contends that the administrative law judge's discussion of his daily activities "constitut[es] a slanted effort to support a finding of not credible."  Itemized Statement at 6.  After pointing out entries in the medical records recording that certain medications were helpful in reducing pain, as was physical therapy, the administrative law judge discussed the plaintiff's activities of daily living as follows:

---

[3] At oral argument, counsel for the commissioner asserted that the administrative law judge assigned limitations that were consistent with the independent evaluation performed by Steven G. Johnson, M.D., a copy of which was provided to the court, without explanation, as "the Supplemental Administrative Transcript" in this case ten days before oral argument and almost six months after the administrative record was submitted.  Dr. Johnson's report is given the exhibit number 12F, Supplemental Administrative Transcript at 521, but that exhibit number is already assigned to a report of an independent psychological examiner, Record at 3 & 336-38, although the last two pages of that exhibit bear the handwritten notation "13F" in the lower right-hand corner.  Record at 337-38.  The record already contains an Exhibit 13F, which is a physical RFC assessment by a state-agency reviewer.  *Id*. at 339-46.  The administrative law judge's opinion, on the other hand, does refer to Exhibit 12F as "Dr. Johnson's report."  *Id*. at 27.  In any event, Dr. Johnson's report is also dated earlier than that of Dr. Schuler.  Supplemental Administrative Transcript at 521; Record at 469.  In addition, there is no indication in Dr. Johnson's report that he was provided with any of the plaintiff's medical records, so it is unlikely that he would have been provided with Dr. Schuler's report had it been available.

7

> The claimant was evasive when he was questioned about his activities of daily living, activities which contradict the level of pain he alleges. Although he exhibited reluctance to admit it, he swims on a daily basis in the summer (Exhibit 5E). Although he complains of difficulty standing and inability to stand for more than 20 minutes at a time, he does laundry, shops, runs errands once or twice weekly, prepares three meals per day (Exhibit 13E), and goes for daily walks (Exhibit 5E). Although he complains of tingling in his hands and arms, swelling in his hands and arms, and difficulty holding the steering wheel of his car (Exhibit 13F), he concedes that he drives as necessary when his wife is not at home. He gets his children off to school in the morning. He socializes every two weeks with friends for three to four hours at a time (Exhibit 13E). He goes out to dinner occasionally. These latter activities are markedly inconsistent with the nearly excruciating levels of chronic pain of which he complains, in spite of which he admits he can handle money (Exhibit 13E), can read daily (Exhibit 13E), and can enjoy music (Exhibit 13E).

*Id*. at 30. Exhibit 5E is an Adult Function Form completed by the plaintiff on May 8, 2001. *Id*. at 163-67. Exhibit 13E is a two-page Claimant's Statement When Request for Hearing is Filed and the Issue is Disability, *id*. at 224-25, and cannot be the exhibit to which the opinion refers. Exhibit 11E appears to be the document to which the opinion refers.[4] *Id*. at 217-21. It is another Adult Function Form, completed by the plaintiff on April 22, 2002. *Id*. at 221.

Exhibit 5E states that the plaintiff "go[es] on walks . . . about every day weather p[er]mitting" and "swim[s] sum[m]er." *Id*. at 166. It may not fairly be construed to state that he "swims on a daily basis in the summer."[5] *Id*. at 30. Exhibit 11E states that the plaintiff prepares his own meals, socializes with friends two times a month for periods from less than one-half hour to four hours, goes out for supper "maybe 6 times a year," goes out for short walks the same number of times, handles his own money, does dishes and sweeps the floor. *Id*. at 217-220. Contrary to the findings of the administrative law judge, the form also states that the plaintiff does not shop and it cannot reasonably

---

[4] At oral argument, counsel for the commissioner conceded that "the references to exhibits [in the administrative law judge's opinion] are off."

[5] The plaintiff testified that one of his physicians "had me go to aqua — in the pool" and that he "had to stop doing it because it was irritating my ankles and my feet and my legs. I couldn't do it." Record at 51.

8

be construed to state that he does laundry, enjoys music or shops or runs errands once or twice weekly. *Id.* While the form does state that the plaintiff reads, he reads for one-half hour a day but "ha[s] to read things 3 or 4 times then if [he] do[esn't] understand it [he] h[as his] wife tell [him] what it means." *Id*. at 219.

If the administrative law judge meant to refer to the plaintiff's testimony at the hearing, the plaintiff testified that he could get breakfast ready for his children at times in one-half hour and then "I'm done for the day," and sometimes it would take two or three hours. *Id*. at 46. He testified that "[l]aundry is something that's a nightmare but it has to be done." *Id*. He testified that he only drives to doctor's appointments when his wife is at work and to the store, which is a mile away. *Id*. at 56. He testified that he does small errand shopping at "the Jerry's down the street" once or twice a week and that he does not "even deal with money." *Id*. He specifically denied swimming daily in the summer, saying that his physical condition had been getting worse. *Id*. at 58. With all due respect to the administrative law judge's ability to evaluate a witness's credibility by observing him during his testimony, it does not appear accurate to characterize this testimony as the plaintiff being reluctant to admit that he swims daily or as exhibiting evasiveness.

The administrative law judge also drew "a negative inference concerning [the plaintiff's] credibility" from his "poor work record (Exhibit 7D)." *Id*. at 30. Even without consideration of the evidence filed on this issue after the hearing in support of an explanation offered at the hearing, *id*. at 53-54, 518-19, this is not an appropriate basis for assessing credibility. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); Social Security Ruling 96-7p ("SSR 96-7p"), reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2004), at 134-36. At oral argument, counsel for the commissioner contended that work history may be considered in evaluating a claimant's credibility, citing *Bean v. Chater*, 77 F.3d 1210 (10th Cir. 1996), and *Ownbey v. Shalala*,

9

5 F.3d 342, 345 (8th Cir. 1993). The *Bean* decision relies on Social Security Ruling 88-13 as authority for its assertion that the administrative law judge should consider a claimant's prior work history in evaluating subjective complaints of disabling pain. 77 F.3d at 1213. That Ruling was superseded two months before the *Bean* decision was issued by Social Security Ruling 95-5p ("SSR 95-5p"), reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2004) at 104, and SSR 95-5p was in turn superseded by SSR 96-7p, *id*. at 133. Neither SSR 95-5p nor SSR 96-7p mentions work history as an appropriate consideration in evaluating credibility. The *Ownbey* opinion states, without citation to authority, that the plaintiff's "past work history does indicate a lack of financial motivation to return to work." 5 F.3d at 345. To the extent that this observation may reasonably be read as the use of work history to evaluate a claimant's credibility, the opinion predates both SSR 95-5p and SSR 96-7p. Neither opinion persuades me that the administrative law judge in this case properly considered the plaintiff's work history.

These errors, together with the administrative law judge's failure to discuss Dr. Schuler's clarification of his statement concerning the plaintiff's ability to complete a normal work week without undue interruption, which the vocational expert testified would make all of the jobs on which the administrative law judge's opinion relies unavailable, make it necessary to remand this case.

## Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **VACATED** and the cause remanded for further proceedings consistent with this opinion.

### *NOTICE*

***A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum***

*and request for oral argument before the district judge, if any is sought, within ten (10) days after being served with a copy thereof.   A responsive memorandum and any request for oral argument before the district judge  shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 1st day of June, 2006.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge